Case 5:22-cv-01025-R Document ... 12/02/22 Page 1 of 19

EXHIBIT
1

CJ-2022-5399
Mai

# IN THE DISTRICT COURT IN AND FOR OKLAHOMA COUNTY
# STATE OF OKLAHOMA

| | | |
|---|---|---|
| (1) ROBERT LEE MOORE, JR., | ) | FILED IN DISTRICT COURT |
| | ) | OKLAHOMA COUNTY |
| (2) JACQUELYNN AYERS, | ) | |
| | ) | NOV - 2 2022 |
| (3) BREON KATRELL SMITH, | ) | |
| | ) | RICK WARREN |
| (4) MICHAELA DE'JON LEWIS | ) | COURT CLERK |
| | ) | 42_____ |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CJ-2022-5399 |
| | ) | |
| (1) OKYLP OKLAHOMA YOUTH LITERACY PROGRAM, INC., a/k/a OKLAHOMA YOUTH LITERACY PROGRAM I, an Oklahoma Domestic not-for-profit corporation, | ) ) ) ) | |
| | ) | |
| (2) IMPACT ATHLETICS, INC, an Oklahoma domestic not-for-profit corporation, | ) ) | |
| | ) | |
| (3) GINA DARBY, an individual, | ) | |
| | ) | |
| (4) MILEN DARBY, SR., an individual, | ) | |
| | ) | |
| (5) ROSIE ANDERSON, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

## PETITION FOR DAMAGES AND RELIEF

COMES NOW, Plaintiffs Robert Lee Moore, Jr., Jacquelynn Ayers, Breon Katrell Smith, and Michaela De'Jon Lewis, and for their respective claims for relief and damages against Defendants, allege and state as follows:

### PARTIES

1. Plaintiff, Robert Lee Moore, Jr., ("Moore") is an adult male resident of

1

Oklahoma County, Oklahoma, and for all material times complained of herein was a former employee of Defendants OKYLP Oklahoma Youth Literacy Program, Inc., and Impact Athletics, Inc.

2. Plaintiff, Breon Katrell Smith, ("Smith") is an adult male resident of Oklahoma County, Oklahoma, and for all material times complained of herein was a former employee of Defendants OKYLP Oklahoma Youth Literacy Program, Inc., and Impact Athletics, Inc.

3. Plaintiff, Jacquelynn Ayers, ("Ayres") is an adult female resident of Oklahoma County, Oklahoma, and for all material times complained of herein was a former employee of Defendant OKYLP Oklahoma Youth Literacy Program, Inc.

4. Plaintiff, Michaela De'Jon Lewis ("Lewis") is an adult female resident of Oklahoma County, Oklahoma, and for all material times complained of herein was a former employee of Defendant OKYLP Oklahoma Youth Literacy Program, Inc.

5. Defendant, OKYLP Oklahoma Youth Literacy Program, Inc., a/k/a Oklahoma Youth Literacy Program, I., a/k/a OKYLP, and operates under the trade name, Oklahoma Youth Literacy Program, (hereinafter jointly "OKYLP") is a domestic Oklahoma not-for-profit corporation, which is headquartered in Oklahoma County, Oklahoma and does business in Oklahoma County, Oklahoma.

6. Defendant, Impact Athletics, Inc., ("Impact") is a domestic Oklahoma not-for-profit corporation, which is headquartered in Oklahoma County, Oklahoma and does business in Oklahoma County, Oklahoma.

7. Defendant, Gina Darby is an individual who resides in Oklahoma County, Oklahoma and is an officer, agent and/or representative of OKYLP and Impact.

8. Defendant, Milen Darby, Sr., is an individual who resides in Oklahoma County, Oklahoma, and is an officer, agent and/or representative of OKYLP and Impact; and on information and belief, is the husband of Gina Darby.

9. Defendant, Rosie Anderson, is an individual who resides in Oklahoma County, Oklahoma and is an officer, agent and/or representative of OKYLP and Impact.

## JURISDICTION AND VENUE

10. Plaintiffs' claims for relief are based on failure to timely pay wages, including overtime wages in violation of failure to pay earnings in violation of Oklahoma's Protection of Labor Act, 40 O.S. § 165.1 *et seq.*, violation of Oklahoma's public policy related to manipulation of employee wages and wrongful recordkeeping for purposes of misrepresentation of employee reports, and common law claims of negligent infliction of emotional distress; the Fair Labor Standards Act, 29 U.S.C. § 207, *et seq.*; retaliation, to include termination after demand for wage payment in violation of 29 U.S.C. § 215.

11. All actions complained of occurred in Oklahoma County, accordingly pursuant to 12 O.S. § 134 venue is proper in Oklahoma County. Jurisdiction over Plaintiffs' federal claims are vested pursuant to this court's inherent authority to adjudicate claims arising under the laws of the United States. OKLA CONST. Art. 7 § 7. For all material times, each of the actions and events complained of herein occurred in Oklahoma County, and the Defendants may be properly served in Oklahoma County.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS

12. Plaintiffs are each former employees of Defendants OKYLP Oklahoma Youth Literacy Program, Inc., and/or Impact Athletics, Inc.

13. OKYLP Oklahoma Youth Literacy Program, Inc., and Impact Athletics, Inc., are engaged in the business of providing program, services and activities for youth in the greater Oklahoma City area.

14. The participants, employees and staff of OKYLP Oklahoma Youth Literacy Program, Inc., and Impact Athletics, Inc., overlap, and have sometimes been used interchangeably one for the other.

15. OKYLP Oklahoma Youth Literacy Program, Inc., and Impact Athletics, Inc., have interlocking directors and officers.

16. OKYLP Oklahoma Youth Literacy Program, Inc., operates, or has operated under numerous Trade Names, including, but not limited to, "Let's Get Sharper (LGS)"; "Infinity Generation Generals (IGG) Inc."; "Infinity Generation Preparatory School" and "Oklahoma Youth Literacy Program (OKYLP), Inc."

17. Each of the Plaintiffs were employed as kitchen and food service workers, preparing the food that was distributed and served to the youth that participated in the various programs operated by OKYLP Oklahoma Youth Literacy Program, Inc., and Impact Athletics, Inc.

18. Plaintiffs were full-time employees, and from time-to-time worked in excess of eight hours daily, and over forty (40) hours weekly. On occasion, Plaintiffs would work in excess of ten (10) hours daily. Plaintiffs work hours were compiled through an electronic

reporting and sign in recording system, and were required to be paid bi-weekly on Friday during such pay periods.

19. Plaintiffs, and each of them, qualified for policies of OKYLP Oklahoma Youth Literacy Program, Inc., and Impact Athletics, Inc., for holiday, vacation, overtime or similar advantages of pay promised in connection with their employment.

20. Deductions were taken from Plaintiffs' wages for the purpose of obtaining the benefit of health, dental and life insurance coverage.

21. During all material times pertinent to the claims made herein, OKYLP Oklahoma Youth Literacy Program, Inc., and Impact Athletics, Inc., received or generated revenue from, *inter alia*, program participants, private and governmental grants, reimbursements, donations and contributions.

22. As of September 14, 2021, Defendant OKYLP Oklahoma Youth Literacy Program, Inc., reported gross annual contributions, gifts and grants in the amount of Eight Hundred Thousand Dollars ($800,000.00).

23. As of March 30, 2022, Impact Athletics, Inc., reported gross annual contributions, gifts and grants in the amount of Three Hundred Fifty Thousand Dollars ($350,000.00).

24. Commencing in October, 2021, Plaintiffs began experiencing erratic and inconsistent paychecks. At times, Plaintiffs received only partial payment for wages earned, and on other occasions, Plaintiffs were denied payment altogether for wages earned during the relevant pay period.

25. For almost a full year, the period from October, 2021 until Plaintiffs were separated from employment in the late summer of 2022, they were denied payment for wages and benefits earned (the "Non-Payment Period").

26. In order to placate Plaintiffs for their failure to comply with federal and state wage laws during the Non-Payment Period, Defendants devised several schemes aimed at maintaining the services of Plaintiffs, while failing to pay Plaintiffs their proper wages earned.

27. For example, rather than pay Plaintiffs their full lawful wages earned, Defendants or their agents, made arrangements whereby Plaintiffs were given nominal "Cash Advancements" in denominations ranging from Twenty-Five Dollars ($25.00) to Three Hundred Dollars ($300.00). Such "Cash Advancement" were irregular and sometimes recorded on nothing more than miscellaneous pieces of paper that Plaintiffs were forced to sign in order to receive the cash.

28. Also, Defendants attempted to camouflage their unlawful conduct of failing to properly pay earned wages to Plaintiffs by forcing Plaintiffs to sign "Employee Voluneer [sic] Time Sign-In" sheets. Defendants knew execution of those documents were deceptive, misleading and unlawful because Plaintiffs were, at that time, legitimate and actual employees of Defendants.

29. In furtherance of Defendants scheme to avoid responsibility and liability as the employer, and cover their failure to pay Plaintiffs for wages earned, Defendants independently prepared and falsely reported unemployment claims on behalf of Plaintiffs without their knowledge or consent. Defendants knew such reported unemployment claims

submitted on behalf of Plaintiffs were fraudulent since Plaintiffs were still employees of Defendants at the time.

30. When Plaintiffs complained to Defendants about not receiving their paychecks or otherwise not being fully paid for wages rightfully earned, Defendants responded angrily and excused their misconduct by asserting they "had no money to make payroll" but demanded that Plaintiffs continue to work in the meantime "to keep things going" until "things got better."

31. On at least one occasion, Defendants retaliated against Plaintiff Jacquelynn Ayers by terminating her when she complained about not receiving her paycheck.

32. However, during the period that Plaintiffs were denied their lawfully earned wages, Defendants Gina Darby and Milan Darby were personally enjoying a lavish lifestyle and other benefits generated by Plaintiffs services.

33. Plaintiffs relied upon the expectation that they would timely receive payment for hours worked as originally promised by Defendants. As a direct result of Plaintiffs not timely receiving their earned wages and benefits from Defendants, Plaintiffs endured emotional distress from the inability to pay their bills and obligations as they became due.

34. Plaintiffs worked in excess of forty (40) hours weekly and the Defendants were obligated to pay each Plaintiff a minimum wage pursuant to 29 U.S.C. § 206, hours worked and compensation earned.

35. From time-to-time, Plaintiffs were required to work in excess of forty (40) hours weekly which constituted overtime hours that became due and owing. Pursuant to

29 U.S.C. § 207, *et seq.*, Defendants were responsible for overtime wages for each employee.

36. Pursuant to the provisions of 40 § 165.3(A), "whenever an employee's employment terminates, the employer shall pay the employee's wages in full, less offsets,…at the next regular designated payday…."

37. In addition to wages due and owing that remain unpaid the "employer shall be additionally liable to the employee for liquidated damages. 40 O.S. § 165.3(B).

**FIRST CLAIM FOR RELIEF**
[Fair Labor Standards Act of 1938-Failure To Pay Minimum Wages]

38. Plaintiffs reallege each and every prior paragraph of the Complaint as if fully set out here and further alleges as follows.

39. During the Non-Payment Period, Defendants submitted vouchers to Plaintiffs as substitute payment for their full wages earned. Such vouchers were described by Defendants as "advancements" when in reality the nominal sums paid to Plaintiffs were for hours worked and wages earned during the relevant pay period.

40. Moreover, since Defendants considered the cash voucher payment as "advancements," Plaintiffs became obligated to repay such "advancements" and Defendants would subsequently deduct any cash paid to Plaintiffs from their future wages if and when they were paid.

41. As a consequence of Defendants acts and conduct, Defendants willfully violated the provisions of section 6 and 15(a)(2) of the Fair Labor Standards Act, 29 U.S.C.

8

§§ 206 and 215(a)(2) ("FLSA"), as Plaintiffs did not receive their minimum wages at rates required by law since October, 2021.

42. Defendants' violations were willful because Defendants maintained digital time cards during the Non-Payment Period and was well aware that Plaintiffs were due and owing payment for wages earned in excess of amounts represented by the "advancements."

43. Due to Defendants' violation of the FLSA, Plaintiffs are entitled to recover from Defendants their unpaid compensation, liquidated damages, reasonable attorney's fees and the costs of this action, pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiffs request damages for their First Claim For Relief to include unpaid wages and an additional amount for liquidated damages, prejudgment interest, reasonable attorney fees and costs; and for such other and further relief as may be available in law and equity.

**SECOND CLAIM FOR RELIEF**
[Fair Labor Standards Act of 1938-Failure To Pay Overtime Wages]
(Robert L. Moore, Jr. and Breon Katrell Smith)

44. Plaintiffs reallege each and every prior paragraph of the Complaint as if fully set out here and further alleges as follows.

45. At least since October, 2021, Plaintiffs Robert L. Moore, Jr., and Breon Katrell Smith, worked several hours in excess of forty (40) hours per workweek without receiving overtime pay from Defendants. For example, Plaintiff, Robert L. Moore, Jr. would clock in for work at approximately 5:30 a.m. and often times would be required to stay at his post until the end of the workday at 5:00 p.m. During such workweeks, Mr. Moore would log in approximately 50 to 60 hours per week. Mr. Moore was due to be

paid at time-and-a-half premium for all hours worked in excess for the regular work week hours, yet Defendants failed to compensate Mr. Moore for overtime hours worked.

46. Defendants were well aware of the legal requirement to pay overtime wages because notations were made on employee's employment records indicating a right to overtime under appropriate circumstances. Accordingly, such facts demonstrate Defendants knew or showed reckless disregard for the matter of whether their conduct was prohibited by the FLSA.

47. Due to Defendants violation of the FLSA, Plaintiffs are entitled to recover from Defendants their unpaid compensation, liquidated damages, and reasonable attorney's fees and the costs of this action, pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiffs request damages for their Second Claim For Relief to include unpaid wages and an additional amount for liquidated damages, prejudgment interest, reasonable attorney fees and costs; and for such other and further relief as may be available in law and equity.

### THIRD CLAIM FOR RELIEF
[Fair Labor Standards Act of 1938-Retaliation]
(As To Plaintiff Jacquelynn Ayers)

48. Plaintiff realleges each and every prior paragraph of the Complaint as if fully set out here and further alleges as follows.

49. After not receiving her wages earned for hours worked at Defendants' business, Plaintiff, Ayers went to the business office to complain to Defendant, Gina Darby. During the meeting between Ms. Ayers and Defendant Gina Darby regarding compensation issues, Ms. Ayers indicated that she had been advised to contact the

10

Oklahoma Board of Labor. In response, Defendant Gina Darby first attempted to persuade against Ms. Ayers contacting the Oklahoma Board of Labor. When Defendant Gina Darby realized that Ms. Ayers would proceed to obtain her earned wages through the Oklahoma Board of Labor, Defendant Gina Darby retaliated against Ms. Ayers by immediately terminating her.

50. Section 15(a)(3) of the FLSA provides, in relevant part, that it shall be unlawful for any person to discharge or in any other manner discriminate against any employee for engaging, or preparing to engage , in activity that is protected by the FLSA.

51. Due to Defendants' violation of the FLSA, Plaintiff, Jacquelynn Ayers is entitled to recover from Defendants her compensation, liquidated damages, and reasonable attorney's fees and the costs of this action, pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, Jacquelynn Ayers, requests damages for her Third Claim For Relief to include unpaid wages and an additional amount for liquidated damages, prejudgment interest, reasonable attorney fees and cost; and for such other and further relief as may be available in law and equity.

### FOURTH CLAIM FOR RELIEF
[Oklahoma Protection Of Labor Act-Failure to Pay Wages Earned]

52. Plaintiffs reallege each and every prior paragraph of the Complaint as if fully set out here and further alleges as follows.

53. During the Non-Payment Period, Plaintiffs continued to work and earn wages due and owing from Defendants, for which Plaintiffs were not properly compensated. Instead, Defendants would randomly provide Plaintiffs with vouchers which would

11

represent "cash advances" to Plaintiffs that were designed to prevent Plaintiffs from receiving their true wages earned and therefore deny Plaintiffs compensation in violation of the Oklahoma Protection Of Labor Act, 40 O.S. § 165.1 *et seq.* ("OPLA").

54. Pursuant to the OPLA, Defendants were required to tender payment for wages earned not later than eleven (11) days after such wages had been earned.

55. Defendants have failed and refused to pay Plaintiffs for wages earned and therefore are liable to Plaintiffs for liquidated damages.

56. Due to Defendants' violation of the OPLA, Plaintiffs are entitled to recover from Defendants their unpaid compensation, liquidated damages, and reasonable attorney's fees and the costs of this action.

WHEREFORE, Plaintiffs request damages for their Fourth Claim For Relief to include unpaid wages and an additional amount for liquidated damages, prejudgment interest, reasonable attorney fees and costs; and for such other and further relief as may be available in law and equity.

### FIFTH CLAIM FOR RELIEF
[Oklahoma Protection Of Labor Act-Failure to Pay Overtime Compensation]
(As To Plaintiffs Robert L. Moore, Jr. and Breon Katrell Smith)

57. Plaintiffs reallege each and every prior paragraph of the Complaint as if fully set out here and further alleges as follows.

58. During the Non-Payment Period, Plaintiffs Robert L. Moore, Jr., and Breon Katrell Smith worked hours in excess of forty (40) hours per week for which Defendants failed to compensate said Plaintiffs for overtime hours worked.

59. Defendants were well aware of the legal requirement to pay overtime wages because notations were made on employee's employment records indicating a right to overtime under appropriate circumstances. Accordingly, such facts demonstrate Defendants knew or showed reckless disregard for the matter of whether their conduct was prohibited by the OPLA.

60. Due to Defendants' violation of the OPLA for failing to pay overtime wages earned, said Plaintiffs Robert L. Moore, Jr., and Breon Katrell Smith are entitled to recover from Defendants their unpaid compensation, liquidated damages, reasonable attorney's fees and the costs of this action, pursuant to 40 O.S. § 165.2, *et seq*.

WHEREFORE, Plaintiffs Robert L. Moore, Jr., and Breon Katrell Smith request damages for their Fifth Claim For Relief to include unpaid wages and an additional amount for liquidated damages, prejudgment interest, reasonable attorney fees and costs; and for such other and further relief as may be available in law and equity.

### SIXTH CLAIM FOR RELIEF
[Oklahoma Public Policy Violations]
(As To Plaintiffs Robert L. Moore, Jr. and Breon Katrell Smith)

61. Plaintiffs reallege each and every prior paragraph of the Complaint as if fully set out here and further alleges as follows.

62. During the period in which Plaintiffs Robert L. Moore, Jr., and Breon Katrell Smith were and remained employees of Defendants, as a way and means of Defendants avoiding direct payment of wages earned, Defendants unilaterally submitted unemployment claims with the State of Oklahoma.

63.     Defendants submission of those unemployment claims were without Plaintiffs consent or cooperation.

64.     Defendants knew at the time of submitting the unemployment claims that Mr. Moore and Mr. Smith were still employed with Defendants at the time.

65.     It is against the public policy of the State of Oklahoma to make false statements for the purpose of securing unemployment benefits pursuant to 40 O.S. § 5-102; 76 O.S. § 2, 3.

66.     Because such actions taken by Defendants was willful, intentional and malicious, Plaintiffs Moore and Smith are entitled to an award of punitive damages as provided by applicable Oklahoma law.

67.     Due to Defendants' violation of the public policies of the State of Oklahoma, Plaintiffs Moore and Smith are entitled to recover from Defendants their unpaid compensation, liquidated damages, and reasonable attorney's fees and the costs of this action.

WHEREFORE, Plaintiffs Moore and Smith request damages for their Sixth Claim For Relief to include unpaid wages and an additional amount for liquidated damages, punitive damages, prejudgment interest, reasonable attorney fees and costs; and for such other and further relief as may be available in law and equity.

### SEVENTH CLAIM FOR RELIEF
[Negligent Infliction Of Emotional Distress]

68.     Plaintiffs reallege each and every prior paragraph of the Complaint as if fully set out here and further alleges as follows.

69. During the Non-Payment Period and thereafter, Plaintiffs did not receive their lawfully earned wages and benefits from Defendants.

70. Basically, Plaintiffs only source of income was the expectation that Defendants would timely and lawfully pay wages and benefits, including medical and other health care resources.

71. Defendants failure to pay wages and benefits to Plaintiffs over a prolonged period had the effect of creating personal hardships and anxiety which, but for the failure and denial of wage payments and benefits, Plaintiffs would not have been forced to suffer.

72. For example, because of Defendants failure to pay wages to Plaintiffs as required by law, that conduct resulted, *inter alia*, in Plaintiffs inability to timely make child support payments that were scheduled; their inability to make housing and rental payments, and causing Plaintiffs to be incapable of paying ordinary day-to-day expenses and utilities.

73. The omissions, acts, events and conduct of Defendants of intentionally and deliberately failing to pay Plaintiffs their wages earned; and acting to conceal their unlawful failure to pay wages by offering nominal and inadequate "cash advances," and encouraging Plaintiffs to simply suffer the consequences, would constitute intentional infliction of emotional distress as to Plaintiffs, and each of them.

74. Accordingly, the acts, conduct, omissions and events suffered by Plaintiffs as a result of Defendants deliberate acts were so extreme and outrageous as to go beyond all possible bounds of decency and would be considered atrocious and utterly intolerable; and the same caused severe pain, suffering and emotional distress to Plaintiffs beyond that which a reasonable person could be expected to endure.

75. As a result of the intentional infliction of pain, suffering and emotional distress, Plaintiffs are entitled to actual and compensatory damages from Defendants.

76. The omissions, acts, events and conduct of Defendants in intentionally and deliberately failing to pay Plaintiffs their wages earned and attempting to overcome their unlawful failure to pay such wages by providing nominal and inadequate "cash advances" constitutes intentional infliction of emotional distress as to Plaintiffs, and each of them.

77. It was foreseeable, and Defendants knew, or should have known, that their acts and omissions would cause and did cause emotional distress upon Plaintiffs.

78. Defendants negligent acts, conduct and omissions were foreseeable to inflict emotional damage upon Plaintiffs, and did cause Plaintiffs to suffer emotional distress. Such emotional distress caused Plaintiffs to manifest sleeplessness, discomfort, depression and mental pain and suffering.

79. As and for the conduct, behavior and actions of Defendants, Plaintiffs have suffered damages of emotional distress in an amount to be proven at trial on the merits in this matter.

WHEREFORE, Plaintiffs pray for judgment against Defendants in their Seventh Claim For Relief, for actual and compensatory damages in an amount to be proven at trial, together with prejudgment interest, reasonable attorney fees, for expenses, and for such other and further relief as may be available in law and equity.

### EIGHTH CLAIM FOR RELIEF
[Personal Liability of Individual Defendants Gina Darby, Milen Darby, Sr. and Rosie Anderson]

80. Plaintiffs reallege each and every prior paragraph of the Complaint as if fully

set out here and further alleges as follows.

81. Defendants Gina Darby and Milen Darby, Sr., are wife and husband and serve as officers, directors and principals in each of the Defendant businesses at issue in this action.

82. Defendant, Rosie Anderson, on information and belief, is the mother of Gina Darby, and serves as President of Defendant, OKYLP Oklahoma Youth Literacy Program, Inc.

83. In their respective capacities as officers, directors and principals of the Defendant businesses, Gina Darby, Milen Darby, Sr., and Rosie Anderson have virtually complete control over the management, operations and discharge of duties and responsibilities of OKYLP Oklahoma Youth Literacy Program, Inc., and Impact Athletics, Inc.

84. In their capacities as officers, directors and principals of the Defendant businesses, Gina Darby, Milen Darby, Sr., and Rosie Anderson are involved in the corporate decision making of the OKYLP Oklahoma Youth Literacy Program, Inc., and Impact Athletics, Inc.

85. The FLSA at 29 U.S.C. § 203(d) defines the term "employer" to include "any person acting directly or indirectly in the interest of an employer in relationship to an employee."

86. In conjunction therewith, the Oklahoma Protection Against Labor Act defines an "employee" to include "[a]ny employee of any employer who is subject to the provisions of any Federal Fair Labor Standards Act or to any Federal Wage and Hour Law

now in effect or enacted hereafter; and who is paying the minimum wage under the provisions of this act…."

87. Defendants, Gina Darby, Milen Darby, Sr., and Rosie Anderson knowingly permitted the businesses to engage in violations of the FLSA and OPLA.

88. Defendants, Gina Darby, Milen Darby, Sr., and Rosie Anderson are individuals liable for violations of the FLSA by operation of law, including, but not limited to the non-payment of wages, failure to pay overtime and retaliation claims set forth herein.

89. As and for the acts, omissions, conduct, and intentional neglectful behavior of Defendants, Gina Darby, Milen Darby, Sr., and Rosie Anderson in connection with the operation and management of the businesses, Plaintiffs have suffered damages for lost wages, failure to pay overtime compensation and emotional distress, for which said Defendants must be held personally liable.

WHEREFORE, Plaintiffs pray for judgment against Defendants in their Eighth Claim For Relief, for actual and compensatory damages in an amount to be proven at trial, together with prejudgment interest, reasonable attorney fees, for expenses, and for such other and further relief as may be available in law and equity.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully demand judgment against Defendants and each of them ask the Court for the following relief:

(a) Damages in amounts to be established at trial, including, without limitation, all wages earned and lost benefits, which are part of Plaintiffs' uncompensated wages, to

include overtime wages and liquidated damages; and damages for past, present and future emotional pain and suffering, ongoing and severe mental anguish;

  (b) Other Compensatory Damages;

  (c) Punitive damages as may be allowable;

  (j) such other and further relief as may be available in law and equity.

      Respectfully submitted,

      /s/ Kwame T. Mumina
      Kwame T. Mumina, OBA# 10415
      GREEN JOHNSON MUMINA & D'ANTONIO
      4101 Perimeter Center
      4101 Perimeter Center Drive, Suite 110
      Oklahoma City, Oklahoma 73112
      Telephone: (405) 702-7228
      Facsimile: (405) 702-6898
      Email: kmumina@gjmlawyers.com

      ATTORNEYS FOR PLAINTIFFS

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**